and tell us who you are and who you represent. We'd appreciate it. Please call the first case. Both sides walk up there as the podium. Tell us who you are. Your Honor, Dan Ebner. I'm sorry, could you speak up? Dan Ebner, on behalf of the decedent and his former spouse. My name is John Bransfield and I'm the attorney for the epilee, the surviving spouse, Ellen Ferrera. Each side has 15 minutes which should cover this case. We have read the briefs, I can assure you, we've done the research, we've looked at the record, the portions that we have. So we behoove you to get to your strongest points first. Before we start, do you agree that the review standard here is de novo? Yes, I do, Your Honor. You both do? Okay. And that if the record is not complete, then we will still resolve the case in the absence of anything missing from the record? Yes, Your Honor. Thank you. Whenever you're ready, Mr. Ebner. May it please the Court, Salvatore Ferrera passed away on December 7th, 2010 with a carefully thought out estate plan. His assets were titled in the name of his trust and if any that weren't titled that way, he had a poor over will that would have distributed those assets to his trust. Initially, it appeared his plan was working. There was less than $100,000 in non-trust assets in his estate. The tri-executors and tri-trustees working with his estate planning attorney executed a small estate affidavit. They transferred his non-probate assets to the trust. They agreed about the status of the remainder of his assets as trust assets. And they were moving forward with the trust administration without probate and its associated transaction costs just like Salvatore intended. Then after a few months of that, things started to fall apart as his surviving spouse started to disagree with how those assets were being administered and made claims to that either they should be outright owned by her or should pass through probate. This appeal involves two issues that were decided contrary to Salvatore's intent dealing with two classes of assets. The first class of assets is the legacy treasury direct accounts. After Salvatore died, the children in the family of the deceased belonged in the trust. They signed a small estate affidavit affirming that they were trust assets. And they actually transferred the assets into the trust. Then his surviving spouse, Ellen, decided she didn't like that outcome and that the assets should be removed from the trust. This was contrary to her sworn affidavit on the small estate affidavit. Nevertheless, the trial court ignored the small estate affidavit and ordered the assets removed from the trust. The fundamental issue here is that Ellen is asking for a do-over. This estate was administered through the small estate affidavit. Everyone agreed that there were $80,000, these two legacy treasury direct accounts, that should pass into the trust. They actually transferred them into the trust. They affirmed on an affidavit that they belonged in the trust. And then she decided that, hey, let's try and do this again because I've now decided I don't like the outcome of it. Their argument is that these assets are distributed. I'm sorry. I'm sorry. I'm getting ahead of myself. I apologize. Their argument is that these were non-probate assets and that it should be possible to open a probate and deal with them. There are two fundamental problems with that. One is that it is clear everyone agrees that these were non-probate estate assets or to be trust assets. That was shown by the affidavit that they signed. And it's also shown by the language of the fact that Salvatore had a poor overwill, which would have transferred these assets to the trust had a probate been opened. And so his intent clearly shows that he intended for all of his estate, including these assets, to be administered through the trust. The second issue is that Ellen made judicial admissions that cannot now be reversed. The law here is that where an affirmation is made under oath, such as in an affidavit or in a deposition, those are considered to be The banks rely on these small estate affidavits. The courts rely on them so that probates don't need to be opened in every case. Ellen admitted that she was acting in a fiduciary responsibility when she was working to transfer these Was the last will in testament actually admitted into proof? The last will in testament was never admitted into probate. But the small estate affidavit is what administered this estate. And so to go back and argue that we now need to have a fight over whether a copy of the, allegedly the original cannot be found, but it's incredibly inefficient to go back and have a fight over whether a copy of this will can be admitted when we have all of this non-litigation-induced evidence that Salvatore's intent was to transfer the assets into the trust. And in fact, that was accomplished. There's no basis. It's only if the statute applies. You're relying on the statute, 625-3. This is dealing with the small estate affidavit issue. And she's presented no reason why we should have to go back and deal with the will issue. How hard would it have been? I believe she submitted an affidavit right for a missing will, and then your clients did the same. And you both withdrew them, did you not? She submitted an affidavit or a petition to administer a will, and then she submitted a second, she withdrew that one and petition to administer the estate in test date, apparently determining that actually she didn't like the idea of administering a missing will. But your clients did as well, did they not? Yes. At some point? I believe that there were some cross-petitions dealing with the issue. But the central point is that that was not needed in this case. It was dealt with. And in a case in particular where there's a missing will, that's a substantial amount of additional costs added on to this administration. The small estate statute exists specifically so that small estates, less than $100,000, don't need to deal with the process of probate with a missing will where there's less than $100,000 in issues. But is it less than $100,000 in issues since that's what we're all fighting about? The bank accounts alone are worth over $100,000. And then the Treasury Direct funds are also worth a fair amount of money and a home, right? Although it seems that most of it has been agreed to. I think everything has been agreed to with the exception of the bank accounts, which will be administered either as probate estate assets or through the trust. And the second set of assets are either going to be trust assets or they are not trust assets. They are not state assets. And again, very large estates sometimes employ small estate affidavits simply because there's some asset, often it's a car, that has not been included in the trust. And they don't want to have to spend $5,000, $10,000 just to move that asset. When you have a fight, when you have a disagreement, you often have to go to probate. But these people made a decision that they didn't have a fight. They administered it. They went so far as to move the assets. And the... Not now. I'm not asking you to concede now. I'm going to fool you out. Orally, you said it would be a good idea. But at the time, when it became clear they were agreeing on nothing, that they should get the will into evidence. Admit it, I should say. It would be great to be able to second-guess decisions, but there are certain... Oh, that's what we do. We're the appellate court. We don't have any original thought process at all. We are here to second-guess. As they say, we're here to shoot the wounded and laugh at the people who won. That's what we do. Then switching... Go ahead. Please respond to the accounts. To the accounts, the Citibank direct accounts. 625-3 is the statute that everyone agrees applies. It provides a default provision in the event that there is no agreement, written agreement, incorporated into the titling of the trust account or the titling of the bank account. And in the event that there is a written agreement incorporated in, it then directs to look at that written agreement to determine how to administer the assets. And that particular signature card is found at Exhibit A, is that right, in the record? That's... Page 591. I believe that is correct. It is the only signature card in the record, yes. I will point out that you don't mention at all in the weight brief, do you, the existence of this 2010 signature card. Is that right? Yes, we discuss the existence of the signature card in the brief. Of the 2010? Of the 2010 signature card. All right, go ahead. Essentially, this is a contract construction case and intent controls in contract construction. The legislature has said that in a particular set of signature cards, which are fundamentally contracts, where there is no written agreement incorporated, then it lays out how the courts should go about construing it, essentially. It provides a default provision. However, in the alternative, where there is a written agreement, the normal rules of construction apply. And here, they weren't followed. This card is unambiguous. Everyone agreed that the card incorporates... that the card titled the assets in the name of the trust. The lawyer who set up the trust agreed. The bank agreed. Ellen originally agreed in two separate e-mails. And the trust directs that anything that vaguely looks like it's titled in the name of this trust belongs to the trust. That was Salvatore's intent. Also shows that the decedent believed that this was titled in the name of the trust. What the trial court did was, frankly, the opposite of trust construction. It said it correctly observed, hey, there is a written agreement that is referenced in this document. Let's go look at it, which is exactly what the statute provides. It then found a minor inconsistency, or what it perceived to be an inconsistency, what the judge perceived to be an inconsistency between the two, and said, oh, all right, this document actually is not the controlling document. And so we will go back and interpret this according to the default provisions of 625. What inconsistency did the judge find? The sole inconsistency is that the signature card identifies two names. It says, Salvatore Ferreira and Ellen, comma, Ellen Ferreira as trustees for Salvatore V. Ferreira Trust, dated whatever its date is. So the court then said, hey, these two people were not co-trustees at the same time. Therefore, it's inconsistent. Therefore, this document can't control. So essentially, that document then became ex- How did he determine that they weren't co-trustees at the same time? The trust makes clear that Salvatore V. Ferreira was the sole trustee during his life, and that after his death or upon his incapacity, Ellen and two of his sons would become co-trustees. Did the agreement between the bank and the people who opened the account provide that we're going to look to the trust document? Did they incorporate the trust document into the bank account documents? They specifically referenced the trust document. So under the statute, you would look to the trust document and see what it all means? Correct. And the trust document states that if it appears that something was titled in my trust and we believe that this was actually correctly titled in the trust, then that would apply. Then the asset should be considered titled in the trust. The trust document also states that the term trustee can refer to a successor trustee as well as a current trustee. So there, in fact, is no ambiguity or inconsistency between the two documents. As you say, the only Exhibit A is the only copy of this 2010 signature card, right? And this is a copy. It's a fax of a fax of a copy. Is that right? Yes. And a large portion of this case depends on being able to read a fax of a fax of a copy. And nobody thought to get the original or a copy of the original so it could actually be read? Nobody can read this. I mean, they don't know how to read English. I agree with you in your white brief where you say it does not say it's co-trustees. So unlike the blue brief which says it says that, it does not say that. So you may have got the handwriting. I have no idea what the writing is. The printing is. I apologize for that. The parties agree as to what was actually written in the titling, aside from, I think, the one inconsistency mentioned in the blue brief. Otherwise, the parties have consistently agreed that what it says is Salvatore V. Ferreira, LNA Dick Ferreira, ATF, which means as Trustee for Salvatore V. Ferreira Revocable Living Trust. Right. And where in this does it incorporate the trust act? By stating Salvatore V. Ferreira Revocable Living Trust dated November 30, 1993. And, indeed, the trial court's first move to determine what this meant was to go read that document, which is if this is an unambiguous card or if this card doesn't incorporate that document, there would have been no need to ever go look at that. The moment the trial judge looked at what that other document was, it meant that either the card is ambiguous and it needed to look to an ‑‑ You can't go to an extrinsic source to determine whether the document you're trying to determine is ambiguous in that. You can't go to the extrinsic source to say it's ambiguous. You look first to the document and say, do I understand this? Is it understandable? Is it reasonably interpreted? If the answer to that is yes, you don't go to the extrinsic document. I totally agree, Your Honor. And, in fact, this is not an extrinsic document. We believe it was incorporated by reference into the card. And, therefore ‑‑ How did that happen? That's my question. Where is it that the bank or a court is instructed that this piece of paper, this agreement with the bank incorporates this extrinsic trust document? Is there anything that tells us that? There is nothing that specifically says it is incorporated. How would one decide that it is incorporated? The ‑‑ Why would you say that? And why would anybody say that? I think, Your Honor, the reason is, obviously, there is no dispute that the trust document, the trust agreement, is referenced in it. And, at a minimum, the common practice of bankers, lawyers, the instructions that are given when titling these assets, is when you reference the trust agreement, then that is the agreement that controls. They are titled in the name of that entity. And, again, that is consistent with how the trial court actually ended up reviewing this, which was, let's go look at the agreement. It's also consistent with how Ellen has suggested we look at this, by saying, hey, you do need to go look at this and then see that these people were not co‑trustees at the same time. We'd argue that that's not relevant. But, certainly, that first step of looking at the trust agreement to understand what's going on is consistent with our position that this document was incorporated by reference into the agreement. But, even if it were, the trust didn't provide for the spouse to be the co‑trustee in this. And, actually, the statute says you'll be tenants in common with the right of survival. The key issue here, again, is intent. And, while the trust didn't provide for them to be co‑trustees at the time, there is the fact that the trust says any reference to the word trustee includes both current and future. And, also, again, if you're going to look at the trust, you need to look at it as a whole. We don't know what Salvatore was thinking when he signed the signature card. We can guess. We can all speculate why he changed the card at that time. But the best evidence about his intent is his provision that, for the purpose of transferring property to my trust, any description referring to my trust shall be effective if it reasonably identifies my trust and indicates that the trust property is held in a fiduciary capacity. That's what 625 does. But there's also his expressed desire was that the money be used in the trust for his well‑being prior to his becoming deceased. Yes. And he may have ‑‑ he was in poor health. He may have anticipated that he would become incapacitated and wanted his wife to have quick access to the money to deal with it in the event that he could no longer make his own decisions. We can only speculate. The trust document provides the best evidence. The trust document is what the court looked to. It's what Ellen has said we should look to. And it is what we believe that 625.3 says we should look to to understand his intent. But the funding verification report didn't reflect this, did it? The 2010 funding verification report with the March 2010 funding verification included these accounts in it. So it also reflected his intent that these accounts be included in his trust. Why don't you take a seat, and we'll have the other side argue, and you'll have some time for reply. Thank you. Mr. Ransfield. May it please the court, counsel. My name is John Ransfield, and I represent the surviving spouse, Ellen Dick Ferrara, the appellee. And I just want to get right into it with respect to the Citibank accounts and the 205 ILLCS 625.3. That statute has nothing to do with intent. The intent of that statute is to make sure that banks have an easy out, that there are no disputes over accounts, and when they are, they can be resolved simply and easily by saying that they are a joint tenancy with right of survivorship. This particular account, I think one thing that the appellant has not provided you with, is a nice timeline. The March funding report, which was March 2010, nine months before he died, it listed that account in his name as trustee under his trust agreement. If he left it alone, if he left it just like that, we wouldn't be here today. That account would be clearly controlled by the trust because it would have identified the trustee, it would have identified the trust instrument, and this statute would not apply. Instead of that, though, in May, in May of 2010, seven months before he died, he wanted to make a change. He presented his wife with a blank signature card. It didn't list accounts. It didn't list the titling. He presented it to her and asked her to sign it. She asked him why he was doing that. He said that he wanted her to have access to that account to be able to pay bills and be able to provide for herself. She signed it on May 11th of 2010. He signs it in June and presents it to the bank. And at that point, I imagine that the account... And how do we know all that? How do we know? It's a hard conversation. Signature card, that's what it says. And the trial court had an affidavit from the surviving spouse. And nothing was presented counter to that affidavit. They argue the Dead Man's Act says we can't consider that. But if they argue the Dead Man's Act, in a sense, Your Honor, I don't believe that was made at trial court. And if it was, it can be really the estate is the one who would have to present that, I believe, to assert the Dead Man's Act. I don't believe that another party can. But, Gage, if you want to talk about intent, that I think is... I think his actions are clear that he wanted something different with respect to this account than other assets. He didn't... I think it's... And if you want to... If he wanted something... If he wanted that trust agreement to control, he would have left it alone. And instead, he made a change. And I think it's interesting to note that he didn't add on the other... his son Vincent or his son Tony to that account, which would have been consistent with the trust terms, which I think would then lead to the idea that this would be... he wanted the agreement to control. He wanted something different with this. Does the signature card, though, indicate in any way that he wanted his wife to have... this was a joint tenancy with survivorship? No, it does not, Your Honor. The only way that you get to that is to say that once the statute applies and since they cannot produce a written trust agreement which explains the duties and obligations of Vellandick Ferrara and the decedent with respect to these accounts, that's when the statute applies and that's when it becomes joint tenancy with the right of survivorship. And it would be consistent with what the decedent told his surviving spouse. Now, getting over to the... the other aspects of this is that if, Your Honor, if you take their position that in a sense this... what would happen when the decedent died? Who was the... I mean, in a sense, if we have a... if this account was supposed to be co-trustees and it was supposed to be under this written trust agreement, was Ellen to become the sole trustee then at that point? Because, you know, a trust agreement doesn't... never provides for co-trustees, so it never really provides for what should happen in that event. So we have... there are a lot of different questions that would need to be answered. And why didn't he change all of his accounts this way? Why just these? And I think those are issues that, in a sense, start to... for me, in a sense, start to show why it's... you know, that there are really answers that the appellant can't address and should. Now, did... I'll ask counsel this when he gets up for reply. Did any of your research turn up any cases interpreting the statute on... I found none. I found none on 205-625-3, Your Honor. And it's been around for a long time, hasn't it? It has. But I think, Your Honor, the idea behind that is to try to make it crystal clear about what... and not to have intent be an issue about how that account should be titled. Because it truly... they brought a petition for declaratory judgment to determine what the title of this is. They didn't bring an action for a resulting trust. They didn't bring an action for a constructive trust. You know, and so, in a sense, what we're looking at truly is a question of title. And with... under this statute, which they say applies, intent really isn't... is not... the legislature does not express an intent issue. Can you go to the legacy Treasury Direct accounts? Okay. With respect to those, Your Honor, the decedent actually had five accounts with Treasury Direct, three of which were correct... you know, were titled in his name as trustee under his trust agreement. Two were not. And those two are the subject of this... of this particular appeal. Your Honor, he makes a... the appellant made a point to say that a small estate's affidavit is an alternative to probate. And it is. But it's only in certain situations. And it's in a sense... it's not to... you can't use it to put... to perform a fraud on a creditor. If there's a dispute between the parties, you can't use it. And if there is something... if there is something about the validity of a will or whether it's admissible, it certainly can't... you know, it really is an appropriate point. But it was your client that filed it. My client did... was under... my client was really poorly... you know, it was... was represented by a counsel who represented the other two co-trustees who had a vested interest in a sense in making sure that the estate plan was... that they drafted and that they had represented the person for 10 years and carefully put it together. You know, they had an interest in trying to make sure that that went forward that way. And I think... I don't think she received good advice on that when she signed it because in a sense... But how did she get around it? How is it still not a judicial admission that she did it? Okay, well I... Because in civil, unlike criminal, you're not entitled to have a good lawyer. Oh, no, I understand that. You're not entitled to a lawyer at all. Okay, but I guess if you look at... if you look at what the admissions are in there, Your Honor, what is she really saying? She said in that that this is a... that this is... that she believes this is the last will and testament of the decedent, that he died, that he had assets, and that this will would be admissible to probate to the best of her knowledge. She's not an attorney. She doesn't know that. But that's about the will. Okay, but here... It's a small estate. Okay, but even... but I guess to your question, is that the remedy for the appellants is to bring a petition for the probate of a lost will because what the issue here... the issue before the trial court wasn't who ultimately should benefit from these assets, but rather are these estate assets? The question of who ultimately benefits is what we do probate for. The process of determining creditor's rights, heirs' rights, and the beneficiaries if there is a will. If the appellants want the will to control, they should prepare a petition for the admission of a lost will, present that to court, and have it ruled on. And unless and until they do that, that issue is not before you. But the children did file a petition, but they never asked the judge basically to rule on it. That's correct. That's correct, Your Honor. And actually, their counsel, Mr. Newitt, did it, and prior to Mr. Newitt, Mr. Cannelli presented it. They both presented and withdrew it before it was ruled on. If they ruled on it, I would grant you you could look at that, but it's not before you. Is there any discussion about the reason for their removal? Both. I can tell you this. First it was Judge Allen before Mr. Cannelli, and Judge Allen asked if there were consents from all interested parties. Mr. Cannelli reported that there were not. The surviving spouse did not consent. And Judge Allen then said, if you ask me to rule, I'm going to rule against the admission of the will. And at that, Mr. Cannelli withdrew it. And so that's what I can report, Your Honor. Anything else? The only other thing, Your Honor, just in closing, I would just say that in a sense that on the citation recovery, the true point of what the trial court was looking at was, in a sense, was this asset in the decedent's name alone at the time of death? And that was the only issue before the probate court, not who would ultimately benefit. And on the issue of the Citibank accounts, which is the 205 ILCS 625-3, the issue there truly is, in a sense, is whether or not we have a written trust agreement, which fully has all the terms that would be necessary to it. If we're going to enforce this against the surviving spouse, the written agreement would have to set forth what her obligations are when she serves as co-trustee. We have no written agreement which specifies that. And that's my problem with doing that. So correct me if I'm not observing this correctly. Okay. You said earlier that before May 2010, Mr. Ferrara had an account that listed himself as trustee for his trust. Had he died, the money in that account, or these accounts, where would that money have gone? That would have been controlled by the trust agreement, and so there would be no argument on my part that that would belong to the trust agreement. And in the trust agreement after his death, what happens to that money? That money would be split to the children. According to the trust? Yes, according to the trust. Okay. Then along comes May. Yes. According to you, he gives his wife a blank signature card. Yes. So none of this other information is on there. That's correct. She signs it about a month later, June. He signs it, fills in the rest of the information, right? Yes, Your Honor. He dies, and your contention is at that point the money goes to his wife. My contention is that it would belong to her, based on the theory that the account itself designates that it's intended to be in trust and that they're to hold it for the benefit of that written trust agreement. However, that written trust agreement cannot control what the obligations of the co-trustees are because it does not specify that the decedent and his surviving spouse were to serve as co-trustees. So if we're going to enforce the terms of that trust, we can't enforce the terms of that trust because it doesn't do the initial step, which is to identify co-trustees. And your contention is his intent when he put his wife's name on there is that when he dies, she gets the money. Is that correct? That would be mine. That would be. But I would also just state that my first answer, my broader answer would be that 625-3 wouldn't require an intent issue. It would require just that we don't have a written agreement that specifies co-trustees. But if you force me to, like, in a sense say that what was intent was, I would say that I believe that in a sense that he believed that he wanted his wife to have those accounts. Okay. So not that I'm saying he should have, would have, could have, but he could have easily just after he gave her the blank signature card, signed his name, changed the name on the account to Sal and Mrs. period. He could have, Your Honor. You're absolutely right. But I would also say that. To accomplish what he wanted is on my death my wife gets the money. Yes, he could have. And the only thing I would specify to add to that or supplement that would be to say that oftentimes when you go into a bank and you want to change something from the way that it is, which was in trust, and you want to make a joint tenancy, they sometimes, in a sense, impose their own will on what should be done. And if a person isn't strong-willed about it, may go along with it. So I suppose. But we don't know that. We don't know that. But also, Your Honor, if he left it alone, if he didn't make any change to that card, we wouldn't have a discussion here today. Thank you. Thank you, Your Honor. Mr. Ebner, briefly. Very briefly on the legacy direct accounts, the issue has been raised. The question of who benefits is a separate proceeding from what is a probate account is something that was raised by Ellen's counsel. If there was a creditor or if there was a beneficiary who was not a fiduciary, then maybe it would be appropriate to force open a probate proceeding. But here everyone decided what were the probate or what would have been the probate assets and where they should go early on. And, again, they're just asking for a do-over of that that is not warranted and is contrary to their request. But they've already won on the do-over, right? You're here as the appellant, and so they won on the do-over. They said we want a do-over. You're saying they shouldn't have allowed it, but they did. And neither side has still produced a will for an assist. The trial court permitted them a do-over, and that is what we're appealing. With respect to the Citibank accounts, the – Salvatore Ferreira did change the card in June 2010. We don't know why. We know that there's an affidavit that was produced during litigation that speculates about why. We also know that there are earlier admissions by Ellen, who also signed the affidavit, that these were intended to be trust assets. Did you raise the Dead Man's Act below? Yes, we did. Okay. The – and I think more important than that, though, is that the litigation-induced statements are less reliable than what she said prior to litigation being started. This goes along with the fact that there are many answers we can't – questions we can't address here. We absolutely admit that. We don't know why he did it. We don't know why he didn't change other cards, just as Mr. Bransfield stated. But the point of all of that is that we need to – if there is a question about intent, we need to look at what the best evidence of that is, which is the decedent's estate planning documents that show that he wanted his assets to be distributed through this trust according to his wishes. The other related issue was that the statement that 625-3 has nothing to do with intent and the card does not say joint tenants with rights of survivorship, which you raised earlier. We could not find any cases dealing with this statute, but what we did find were cases dealing with payable on death accounts, which are in some ways similar. They are still contracts, still signature cards. And what those cases said is anytime there – even if there is technical conformity to the statute, if there is a question of intent that has been raised, it is appropriate to then engage in construction analysis. So the statute, even when it has technically been satisfied, which we disagree that it has in this case, but even if you find that it has been, because there are questions about intent, because there are questions about ambiguities, it is appropriate to engage in the construction analysis that necessarily requires looking at the trust document, and the trust document is pretty clear about what Salvatore intended. And we addressed that on page 26 of the white brief, and the case that we cited was Roth v. Roth on that. I also mentioned that I think there is nothing in the record about the blank card that Ellen was presented with, although again I think that is not relevant, because again the best evidence of intent is the estate planning documents. Well, thank you very much for the arguments. Thank you for the briefs. This case will be taken under advisement, and this court will be adjourned.